IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACKIE BURRELL                    *
                                  *
                                  *
v.                                *    Civil Action No. WMN-12-1326
                                  *
                                  *
PAREXEL INTERNATIONAL, LLC        *
                                  *
                                  *
    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

Before the Court is a motion to dismiss filed by Defendant Parexel International, LLC. ECF No. 8. The motion is fully briefed.[1] Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary and that the motion to dismiss must be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Defendant is a research organization that contracts with pharmaceutical and medical device companies to conduct clinical trials. Plaintiff, an African-American woman who was about 50 years old at the time of the events giving rise to this action, was hired by Defendant in October 2001 as a Research Technician. In 2003, Plaintiff was transferred to the position of Data

_____

[1] Plaintiff has filed a motion for leave to file a surreply, ECF No. 14, to which Defendant responded. While the proposed surreply fails to raise new material allegations or relevant arguments, in light of Plaintiff's pro se status, the Court will grant the motion for leave.

Support Specialist in the Data Management Department where her supervisor at first was Mary Alexander and later, Denise Esposito.  In May of 2011, Plaintiff was separated from her employment as part of a reduction-in-force in which six other employees of Defendant also lost their jobs.

The "Complaint" in this action is a collection of 105 pages of handwritten notes, email exchanges, and other documents assembled in no particular order.  On the first page of this collection of documents, Plaintiff asserts she is bringing "Complaints for the following; 1. Race; 2. Age; 3. Retaliation; and 4. Invasion of Privacy."  ECF No. 2 at 1.  Although the Complaint does not explicitly so state, it is assumed the Plaintiff is bringing claims under Title VII of the Civil Rights Act of 1964, as amended, (Title VII) 42 U.S.C. § 2000e et seq. and the Age Discrimination in Employment Act (ADA), 29 U.S.C. § 626 et seq.

On the third page of this collection of documents, Plaintiff gives her "Reason for Filing."  ECF No. 2 at 3.  As to her "Race" claim, Plaintiff avers that she "was treated unfavorably and ignored when making complaints or concerns; [her] coworkers [were] talked kindly to[]; [she was] micro-managed and [had] co-workers spy on [her]; [and a] non-employee [was told her] business."  Id.  Reasons for bringing her "Retaliation" claim include the following: she alleges she was

2

written up for other employees' errors, her work was sabotaged when co-workers hid her charts; she was subjected to threats of bodily harm that were not properly investigated; an HR representative refused to go with her to a one-on-one meeting Plaintiff was to have with her supervisor; and she was the only employee from whom badge and keys were taken after the reduction-in-force.  Id.  To support her "Age" claim, Plaintiff avers "other coworkers were younger and [were] treated with respect."  Id.  Finally, in support of her "Invasion of Privacy" claim, Plaintiff complains that her home address was provided to her supervisor, Esposito.  Id.  Page 4 of the collection of documents lists the injuries that Plaintiff asserts she has suffered.  Those injuries include: headaches, insomnia, high blood pressure, and different signs of depression.  Id. at 4.

While the details are somewhat unclear, the remaining one hundred pages of documents paint a general picture of a workplace in which there was some tension.[2]  There are three particular events which appear to be the focus of Plaintiff's concerns.  The first is an occasion in the fall of 2009 where boxes containing a study on which Plaintiff was working went

---

[2] The Court notes that some of the material submitted by Plaintiff undermines even the finding of general workplace tension.  Plaintiff includes an email from Esposito in which Esposito writes, "I want to apologize to you if I made you upset yesterday . . . .  Believe me, I was not upset with you AT ALL! You did your best . . . and I really do appreciate your efforts."  Id. at 15.

missing for some period of time.  Plaintiff asserts that her co-
workers either hid those documents from her or failed to inform
her once the documents were found.

The second incident occurred within the same timeframe.
Plaintiff states that she complained to Esposito about the poor
work performance of a young white employee.  Plaintiff also made
this same report later in the day to the Human Resources
Manager, Denise Myers, an African-American.  When Esposito
learned that Plaintiff had gone to Human Resources with her
concern, Plaintiff alleges that Esposito became upset, pointed
her finger at Plaintiff and said, "just wait, you don't know
what I can do to you."  Id. at 89.  The white employee was
subsequently terminated for poor job performance.

The third incident occurred in April 2011.  At a meeting of
the Data Management staff, Esposito learned that one of
Plaintiff's co-workers had proposed a very difficult project to
one of Defendant's clients.  Esposito responded, "don't he know
that I've got ties to the mob.  I got 3rd and 4th cousins in the
mob and he can be gone."  Id. at 78.  Plaintiff avers that
Esposito then snapped her fingers and looked at Plaintiff, which
Plaintiff interpreted as a personal threat against her, even
though everyone else was laughing at the comment.  When
Plaintiff reported this "threat" to Myers, Myers did investigate
and concluded that all witnesses to the incident, except for

4

Plaintiff, clearly understood that Esposito was joking.  Id. at
76 (Plaintiff's handwritten notation regarding what Myers
reported back to Plaintiff).

Prior to that third incident, on or about August 30, 2010,
Plaintiff filed a Charge of Discrimination with the Maryland
Commission on Human Relations alleging discrimination based upon
"race (Black), national origin (American) and age (50)" and "in
retaliation for complaining of a protected activity."  The
protected activity for which she alleged she suffered
retaliation was her complaint to Human Resources about the poor
work performance of the non-black employee.  She also complained
that Mary Alexander hid her documents, that [y]ounger non-black,
non-American data support employees in [her] group were treated
more favorably and spoken to kindly," and that she was being
"treated differently" by Esposito.  Ex. A1 to Pl's Opp'n.

After receiving her right-to-sue letter, Plaintiff filed
this action in the Circuit Court for Baltimore City on or about
March 1, 2012.  Defendant removed the action to this Court on
May 3, 2012 and filed the pending motion to dismiss.  Defendant
argues that, except for her termination, Plaintiff has
identified no action taken against her that would constitute an
adverse employment action.  As for the termination, Defendant
argues that Plaintiff failed to exhaust administrative remedies
as to any claim related to that action.  In addition, Plaintiff

has offered nothing to suggest that she was treated differently because of her race or age.  Finally, Defendant suggests that simply allowing Plaintiff's supervisor to see her home address is an insufficient intrusion into Plaintiff's privacy to give rise to a cause of action.

Plaintiff responded to the motion by filing essentially the same 100-plus pages that she filed as her Complaint, but in a different order.[3]  Plaintiff's surreply also simply repeats the allegations that were included in the Complaint without responding to any of the arguments advanced in Defendant's motion.

## II. LEGAL STANDARD

A claim must be dismissed if the allegations in the complaint do not include enough facts to render that claim to relief "plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.  To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the

---

[3] Plaintiff also included a number of pages from her psychiatric history but these documents are not responsive to any argument advanced in the Motion to Dismiss.  In addition, Plaintiff submitted a copy of a Charge of Discrimination and her "right-to-sue letter."

speculative level." <u>Twombly</u>, 550 U.S. at 555.  The Supreme

Court has explained that "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements,

do not suffice" to plead a claim.  <u>Ashcroft v. Iqbal</u>, 556 U.S.

662, 678.

The plausibility standard requires that the pleader show

more than a sheer possibility of success, although it does not

impose a "probability requirement." <u>Twombly</u>, 550 U.S. at 556.

Instead, "[a] claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged." <u>Iqbal</u>, 556 U.S. at 663.  Thus, a court

must "draw on its judicial experience and common sense" to

determine whether the pleader has stated a plausible claim for

relief.  <u>Id.</u> at 664; <u>see also</u> <u>Brockington v. Boykins</u>, 637 F.3d

503, 505–06 (4th Cir. 2011).

## III. DISCUSSION

As Defendant notes, in order to bring a claim under Title

VII or the ADEA, a plaintiff must allege that she suffered an

"adverse employment action."  In the context of a discrimination

claim, an adverse employment action is a discriminatory act

which adversely affects the terms, conditions, or benefits of

the plaintiff's employment.  <u>Holland v. Washington Homes, Inc.</u>,

487 F.3d 208, 219 (4th Cir. 2007); <u>Thorn v. Sebelius</u>, 766 F.

Supp. 2d 585, 598 (D. Md. 2011).  "Although conduct short of
ultimate employment decisions can constitute adverse employment
action, there still must be a tangible effect on the terms and
conditions of employment."  Geist v. Gill/Kardash P'ship, 671 F.
Supp. 2d 729, 737 n.6 (D. Md. 2009).[4]

With the exception of her termination, which will be
addressed below, Plaintiff fails to allege that she suffered an
adverse employment action.  Plaintiff does not allege that she
was demoted, suffered a cut in salary, lost benefits, or was
transferred to a less favorable position.  Instead, she cites
common workplace annoyances – micromanagement, nasty looks,
gossip, being relocated to an office without a window, etc. –
all complaints that are not actionable.[5]  See, e.g., EEOC v.

---

[4] Adverse employment actions in the retaliation context are
evaluated under a more lenient standard.  A plaintiff may
satisfy the requirement of adverse employment action under Title
VII's anti-retaliation provision by showing that "a reasonable
employee would have found the challenged action materially
adverse, which in this context means it well might have
dissuaded a reasonable worker from making or supporting a charge
of discrimination."  Burlington Northern & Santa Fe Railway v.
White, 548 U.S. 53, 68 (2006) (quotations omitted).  With the
exception of her termination, the conduct which Plaintiff
asserts was retaliatory does not satisfy even this more lenient
standard.

[5] Some of Plaintiff's complaints appear to arise out of her own
particular sensitivities.  She complains about her picture being
taken at a Christmas party which she viewed as disrespecting her
wishes.  ECF No. 2 at 23.  Some of Plaintiff's complaints are
somewhat cryptic.  For example, Plaintiff complains that
"[a]nother female African employee wanted to take my picture and
she follow me to try to get a picture so I went to HR and HR

Sunbelt Rentals, Inc., 521 F.3d 306, 315–16 (4th Cir. 2008)

("complaints premised on nothing more than rude treatment by

[coworkers], callous behavior by [one's] superiors, or a routine

difference of opinion and personality conflict with [one's]

supervisor, are not actionable under Title VII.") (quotations

omitted); Adams v. Upper Chesapeake Med. Ctr., Inc., No. AMD 08-

346, 2009 WL 997103, at *4 (D. Md. 2009) ("personal slights are

not adverse employment actions"); Blount v. Thompson, 400 F.

Supp. 2d 838, 842 (D. Md. 2004) (stating that "disparaging

remarks made by a supervisor do not state an adverse employment

action").

Plaintiff's allegation of a "threat of bodily harm" could

perhaps constitute a discriminatory or retaliatory adverse

employment action if indeed there was such a threat made.  Here,

however, the Court must draw on its judicial experience and

common sense to assess the plausibility of Plaintiff's claim.

From the documents Plaintiff herself submitted as part of her

Complaint, it is clear that Esposito was joking when she made

her "mob" comment.  Of note, the comment was not even made to

Plaintiff, but to another employee.  Denise Myers, the Human

Resources Manager who is, herself, African-American, spoke to

---

told her she cannot go around taking pictures if employees do
not want their picture taken.  So the same female about couple
weeks later placed oil outside of my office and said Black snake
for you." Id. at 25.

every individual present at the time the comment was made and
every one of them recognized that Esposito was joking.  ECF No.
2 at 76.  Plaintiff also reports that everyone was laughing when
the comment was made.  Id. at 78.  Such workplace levity,
appropriate or not, is not a plausible basis for a
discrimination claim.

In the material submitted as the Complaint in this action,
there is a Written Warning given to Plaintiff on November 18,
2010.  ECF No. 2 at 70.  The warning charged Plaintiff with
insubordination for refusing to participate in scheduled one-on-
one meetings with her supervisor.  Plaintiff identifies no other
ramifications that came from this Warning and courts have
consistently held that counseling letters, to which this Written
Warning is akin, do not constitute adverse employment actions.
Thorn, 766 F. Supp. 2d at 598; see also Jeffers v. Thompson, 264
F. Supp. 2d 314, 330 (D. Md. 2003) (holding that "[a] reprimand,
whether oral or written, does not per se significantly alter the
terms or conditions of employment," but only becomes an adverse
action if it "works a real, rather than speculative, employment
injury").

Turning to Plaintiff's termination, the materials submitted
by Plaintiff demonstrate that Defendant underwent a reduction-
in-force involving Plaintiff's department and that seven
employees were let go.  ECF No. 2 at 82. Plaintiff acknowledges

that other employees separated from employment because of the
reduction-in-force included a 43-year old white female and a 20-
year old white male.  Id. at 7.  The summary chart submitted by
Plaintiff reveals that, actually, four of the seven employees
who were let go were in their twenties.  Id. at 82.  Without
providing any factual support for her conclusion, Plaintiff
suggests that "I Jackie Burrell truly believe that Parexel had
this bogus company downsizing in Data Management was the only
way to get rid of me for filing charges and that HR did not do
her job correctly and did not investigate the matters."  Id. at
83.

Initially, there is some question as to whether Plaintiff
has exhausted her administrative remedies as to claims arising
from her termination.  Courts have held that it is a "generally
accepted principle that the scope of a Title VII lawsuit may
extend to any kind of discrimination like or related to
allegations contained in the charge."  Jones v. Calvert Grp,
Ltd., 551 F.3d 297, 302 (4th Cir. 2009).  As a corollary to that
principle, courts have allowed claims to be filed first in
federal court if those claims are based upon allegation of
retaliation for having filed a previous administrative charge.
Id.

Here, Defendant reasons that Plaintiff's retaliatory
termination claim is too far removed from the scope of

Plaintiff's administrative charge to satisfy the exhausting requirement as to the instant retaliation charge.  The administrative charge related primarily to Mary Alexander's alleged misconduct of hiding her documents in retaliation for Plaintiff's going to Human Resources about the poor performance of a white coworker.  Plaintiff's retaliatory discharge claim advanced here, argues Defendant, cannot be considered a continuation of the previous alleged retaliatory conduct.

The Court will assume for purposes of this ruling that the claims are sufficiently related so that Plaintiff can be considered to have exhausted her current retaliation claim. Nevertheless, the Court finds that Plaintiff has not proffered sufficient factual allegations to support a discrimination or retaliation claim based upon her termination.  Again, the Court must rely on its judicial experience and common sense to conclude, notwithstanding Plaintiff's unsupported conclusory statements to the contrary, that Defendant did not engage in a ruse and let six other employees go simply to get rid of Plaintiff.

Finally, Plaintiff's "Invasion of Privacy" claim must also fail.  It is not clear what prong of that tort Plaintiff is attempting to bring.  Under Maryland law, there is a claim for "unreasonable intrusion upon seclusion" where there was an "intentional intrusion upon another person's solitude,

12

seclusion, private affairs or concerns in a manner which would be highly offensive to a reasonable person." <u>Trundle v. Homeside Lending, Inc.</u>, 162 F. Supp. 2d 396, 401 (D. Md. 2001). Maryland also recognizes a claim for "unreasonable publicity given to the other's private life." <u>Household Fin. Corp. v. Bridge</u>, 250 A.2d 878 (Md. 1969).

Plaintiff's invasion of privacy claim arises from the fact that Plaintiff's supervisor, Esposito, was copied on a letter to Plaintiff that contained Plaintiff's home address.  One's home address, "is a public fact and [] its mere publication, without more, cannot be viewed as an invasion of privacy." <u>McNutt v. New Mexico State Tribune Co.</u>, 538 P.2d 804, 808 (N.M. 1975).  As Defendant demonstrated, Plaintiff's home address is readily available from public sources.  <u>See</u> ECF No. 8 at 20 and Ex. C (showing that Plaintiff's home address is available on the website, Whitepages.com).  Plaintiff's home address is not a private fact and there was no unreasonable intrusion into, or publication of, that fact.

## IV. CONCLUSION

For all of the above stated reasons, Defendant's Motion to Dismiss will be granted.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge

13

DATED: October 4, 2012